UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

| | |
|---|---|
| SHAWN McCAIN, | ) |
| | ) |
| Plaintiff-Counter Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| APEX ENERGY GROUP, et al. | ) |
| | ) |
| Defendants-Counter Claimants. | ) |
| | ) |

Civil No. 1:14-CV-00791-MRB

Judge Michael R. Barrett

---

## STATEMENT OF INTEREST OF THE UNITED STATES

MAKAN DELRAHIM
 *Assistant Attorney General*

ANDREW C. FINCH
 *Principal Deputy Assistant Attorney
 General*

MATTHEW J. HORWITZ
 *Attorney*
 U.S. Attorney's Office for the
 Southern District of Ohio
 221 E. Fourth St. #400
 Cincinnati, OH  45202
 Tel: (513) 684-6823

KRISTEN C. LIMARZI
JAMES J. FREDRICKS
NICKOLAI G. LEVIN
 *Attorneys*
 U.S. Department of Justice
 Antitrust Division
 950 Pennsylvania Ave. NW #3224
 Washington, DC  20530
 Tel: (202) 514-2886

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTEREST OF THE UNITED STATES ................................................................1

BACKGROUND ....................................................................................................1

ARGUMENT ..........................................................................................................5

CONCLUSION .....................................................................................................17

CERTIFICATE OF SERVICE .............................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Addyston Pipe & Steel Co. v. United States*, 175 U.S. 211 (1899) .........................14

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937) ............................................6, 8

*Anderson v. Int'l Union, United Plant Guard Workers of Am.*,
370 F.3d 542 (6th Cir. 2004) ................................................................................5

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
459 U.S. 519 (1983)...............................................................................................10

*Bement v. Nat'l Harrow Co.*, 186 U.S. 70 (1902) ....................................................10

*Blackburn v. Sweeney*, 53 F.3d 825 (7th Cir. 1995) ......................................... 15, 16

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ..........................................12

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977).....................12

*Diebold, Inc. v. QSI, Inc.*, 2017 WL 3219866 (N.D. Ohio July 28, 2017)...............6

*Dish Network Corp. v. Tivo, Inc.*, 604 F. Supp. 2d 719 (D. Del. 2009) ...................7

*Eichorn v. AT&T Corp.*, 248 F.3d 131 (3d Cir. 2001) ............................................15

*Eva v. Midwest Nat'l Mortgage Banc, Inc.*,
143 F. Supp. 2d 862 (N.D. Ohio 2001) ................................................................7

*Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336 (6th Cir. 2006) ...........13

*Golden v. Zwickler*, 394 U.S. 103 (1969) .................................................................6

*Harrison v. Glucose Sugar Refining Co.*, 116 F. 304 (7th Cir. 1902)....................16

*Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158 (7th Cir. 1987) ........................11

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982).......................................... 5, 9, 10

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007).............13

*Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255 (7th Cir. 1981) ...........................15

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
    542 F.3d 290 (2d Cir. 2008) ....................................................................... 14, 15

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).......................................8

*National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272 (6th Cir. 1997) .....................6

*NicSand, Inc. v. 3M Co.*, 507 F.3d 442 (6th Cir. 2007)..................................... 9, 11

*Northwest Wholesale Stationers Inc. v. Pac. Stationary & Printing Co.*,
    472 U.S. 284 (1985)...............................................................................................13

*Palmer v. BRG of Ga., Inc.*, 498 U.S. 46 (1990) ....................................................13

*Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185 (7th Cir. 1985)............14

*Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*,
    792 F.2d 210, (D.C. Cir. 1986) ................................................................... 14, 15

*Southaven Land Co., Inc. v. Malone & Hyde, Inc.*,
    715 F.2d 1079 (6th Cir. 1983) .............................................................................10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .......................................................6

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) ...............................................................13

*Static Control Components, Inc. v. Lexmark Int'l, Inc.*,
  697 F.3d 387 (6th Cir. 2012) ...............................................................10

*Surrick v. Killion*, 2005 WL 913332 (E.D. Pa. Apr. 18, 2005) ..................................7

*Syntex Labs., Inc., v. Norwich Pharmacal Co.*,
  315 F. Supp. 45 (S.D.N.Y. 1970) .........................................................15

*Syntex Labs., Inc., v. Norwich Pharmacal Co.*, 437 F.2d 566 (2d Cir. 1971).........15

*United Food & Commercial Workers Local Union Nos. 137, 324, 770, 899, 905,
  1167, 1222, 1428, and 1442 v. Food Employers Council, Inc.*,
  827 F.2d 519 (9th Cir. 1987) ...............................................................9

*United States v. Addyston Pipe & Steel Co.*, 85 F. 271 (6th Cir. 1898) ........... 14, 15

*United States v. Cooperative Theatres of Ohio, Inc.*,
  845 F.2d 1367 (6th Cir. 1988) ................................................ 13, 14, 17

*United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972) ....................................13

*US Airways, Inc. v. Sabre Holdings Corp.*,
  2017 WL 1064709 (S.D.N.Y. Mar. 21, 2017)......................................11

*Valley Products Co. v. Landmark*, 128 F.3d 398 (6th Cir. 1997)............................9

*Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*,
  540 U.S. 398 (2004)...........................................................................16

*Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*,
  857 F.2d 55 (2d Cir. 1988) ........................................................ 11, 12

*Wegmann v. London*, 648 F.2d 1072 (5th Cir. 1981) ...............................................8

## CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES

U.S. Const. Art. III ...................................................................................5, 6

15 U.S.C. § 1 ..................................................................................... *passim*
      § 15 ...................................................................................8
      § 26 ...................................................................................8

28 U.S.C. § 517 ...................................................................................1

## MISCELLANEOUS

Gregory J. Werden, *Antitrust Analysis of Joint Ventures: An Overview*,
    66 Antitrust L.J. 701 (1998)...................................................................14

## INTEREST OF THE UNITED STATES

The United States respectfully submits this statement pursuant to 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the Department of Justice to attend to the interests of the United States in any case pending in a federal court.  The United States enforces the federal antitrust laws and has a strong interest in ensuring that parties to contracts outlawed by Section 1 of the Sherman Act, 15 U.S.C. § 1, can seek to declare them unenforceable and avoid being held in contempt for noncompliance.

## BACKGROUND

This case involves a written agreement between former business partners to allocate the geographic markets, i.e., cities, in which each partner is permitted to operate—and the other is prohibited from operating.[1]  One of the partners seeks to compete in cities where it is barred by the agreement and has asked this court to declare the agreement unenforceable because it is *per se* unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1.

1.  Plaintiff Shawn McCain and Defendant Michael Foit previously operated several businesses together, selling windows, doors, and siding in Cincinnati, Indianapolis, and Louisville.  But the partnership dissolved on May 29, 2008.  As

---

[1] The facts in this section are drawn from the publicly available materials in the docket in this and related cases.  All citations are to the docket in this case unless otherwise specified.

part of the dissolution agreement, the parties agreed to divide the businesses: Foit transferred his interest in the Cincinnati and Louisville businesses to McCain, while McCain transferred his interest in the Indianapolis business to Foit. Ex. A to Third Amended Complaint, Doc. 57-1, at 9 (¶ 1). The parties also agreed that each "may develop any market which is not competitive with the Indianapolis, Cincinnati and Louisville market," but they shall not "compete with the other in any market in which: (a) the other does business; or (b) a New Market." *Id.* at 10 (¶ 8), 11 (¶ 13). The parties designated Austin, Columbus, and Dallas-Ft. Worth as "New Markets" for McCain, and Chicago and Minneapolis St.-Paul as "New Markets" for Foit. *Id.* The agreement defined "market" to mean the "city designated" and "areas within a 75 mile radius." *Id.* (¶ 12). The agreement did not specify how long the market allocations would last. *See id.* (¶ 13).

On March 15, 2011, the parties entered into an Amended and Restated Agreement of Reorganization (ReOrg Agreement) that perpetually allocated many geographic markets, including markets in which the partnership had never operated. *See* Third Amended Complaint, Doc. 57, at 3 (¶ 13). The parties agreed that all the provisions of the original dissolution agreement "have expired, except for" the market allocation. Ex. A to Third Amended Complaint, Doc. 57-1, at 2 (¶ 1b). They further agreed that Cincinnati and Louisville were "Permanent Exclusive Markets" perpetually allocated to McCain, and that Indianapolis was a

"Permanent Exclusive Market" perpetually allocated to Foit.  *Id.* at 2 (¶ 3b), 5 (¶ 3e), 25 (Ex. C.).  They also agreed that Austin, Columbus, and Dallas-Fort Worth—in which McCain had developed business in the interim—were "Existing Restricted Markets" perpetually allocated to him, and that Charlotte, Chicago, Denver, Kansas City, Minneapolis-St. Paul, Nashville, and Washington D.C.—in which Foit had developed business—were "Existing Restricted Markets" perpetually allocated to him.  *Id.*

| | **Markets Perpetually Allocated to McCain** | **Markets Perpetually Allocated to Foit** |
|---|---|---|
| **Markets Allocated in the Original Dissolution Agreement** | Austin Cincinnati Columbus Dallas-Ft. Worth Louisville | Chicago Indianapolis Minneapolis-St. Paul |
| **Markets Not Allocated in the Original Dissolution Agreement** | | Charlotte Denver Kansas City Nashville Washington D.C. |



🔴 Markets Perpetually Allocated to Foit

🔵 Markets Perpetually Allocated to McCain

The parties further devised procedures for claiming new markets exclusively allocated to the developing party for 10 years, *id.* at 2-3, 5 (¶¶ 3d, e), and each has since claimed several additional markets.

2.  In the seven years since the parties entered the ReOrg Agreement, it "has been the subject of multiple lawsuits before this Court" pursuant to this Court's diversity jurisdiction to enforce the parties' contractual rights in markets across the nation.  Order, Doc. 36, at 1 & n.1.  McCain seeks to compete in markets precluded by the ReOrg Agreement, and Foit instituted "contempt proceedings

pending in this Court under Case No. 1:14-CV-00621-MRB." *See* Motion for Summary Judgment on Count I of Plaintiff's Third Amended Complaint (SJ Motion), Doc. 66, at 1, 19. This Court found McCain in civil contempt and held a hearing on damages. *See* Opinion & Order, Doc. 26, and Transcript, Doc. 54, in Docket No. 1:14-CV-00621-MRB.

McCain amended his complaint in this case to seek a declaratory judgment under Chapter 2721 of the Ohio Revised Code that the ReOrg Agreement is void as "an unlawful restraint on trade" that violates Section 1 of the Sherman Act. *See* Third Amended Complaint, Doc. 57, at 8 (¶ 43); SJ Motion, Doc. 66, at 20-21; Stipulation for Dismissal of Counts II Through VIII of Plaintiff's Third Amended Complaint Without Prejudice, Doc. 73, at 1. And this Court stayed the contempt proceedings. *See* Order, Doc. 71, in Docket No. 1:14-CV-00621-MRB.

The parties filed cross motions for summary judgment. After the summary judgment briefing was complete, this Court ordered the parties to file supplemental briefs on whether McCain has Article III and antitrust standing to pursue his declaratory judgment claim. Opinion & Order, Doc. 87, at 4.

## ARGUMENT

Contracts that seek to "enforce conduct that the antitrust laws forbid" are "illegal and unenforceable." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 82 (1982); *see also Anderson v. Int'l Union, United Plant Guard Workers of Am.*, 370 F.3d

5

542, 554 (6th Cir. 2004) ("courts may not enforce a contract if the result would be to compel a violation of the law"). McCain seeks a declaratory judgment that the ReOrg Agreement is unenforceable because it violates Section 1 of the Sherman Act. He has standing to seek that judgment.

1.    McCain has Article III standing to bring the declaratory judgment action. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). In general, to have Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*

Declaratory judgments, however, "are typically sought before a completed 'injury-in-fact' has occurred." *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). In such actions, the standing requirement is "limited to the resolution of an 'actual controversy.'" *Id.* (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)). The court "must ask whether the parties have 'adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' even though the injury-in-fact has not yet been completed." *Id.* at 280 (quoting *Golden v. Zwickler*, 394 U.S. 103, 108 (1969)); *see also Diebold, Inc. v. QSI, Inc.*, 2017 WL 3219866, at *3 (N.D. Ohio July 28, 2017) (same).

6

An "actual controversy" exists here.  The ReOrg Agreement bars McCain from certain markets in which he otherwise would compete, and Foit has instituted contempt proceedings to compel enforcement.  McCain seeks a declaration that the ReOrg Agreement is void because it violates antitrust law, which would preclude a contempt sanction for noncompliance.  The parties' legal interests regarding the ReOrg Agreement, thus, are clearly adverse, and the risk of being penalized for being in contempt sufficiently immediate and real to warrant a declaratory judgment on the ReOrg Agreement's enforceability.  *See Dish Network Corp. v. Tivo, Inc.*, 604 F. Supp. 2d 719, 723-24 (D. Del. 2009) (holding that plaintiff had standing to seek declaratory judgment on whether redesigned products infringed patent where patent holder had initiated contempt proceedings in state court); *Surrick v. Killion*, 2005 WL 913332, at *4 (E.D. Pa. Apr. 18, 2005) (holding that plaintiff facing "the threat of potential contempt sanctions" had standing to seek declaratory judgment in civil rights claim); *cf. Eva v. Midwest Nat'l Mortgage Banc, Inc.*, 143 F. Supp. 2d 862, 895 (N.D. Ohio 2001) (holding that plaintiff could seek declaratory relief raising contractual defense of unconscionability and noting that, "[a]s a general proposition, most matters of defense can be raised affirmatively in a declaratory judgment action").

A plaintiff seeking to challenge a contract as unenforceable need not expose himself to litigation or a contempt sanction before seeking a declaratory judgment.

*See Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 137 (2007) (holding there was an "actual controversy" when a patent licensor contesting the payment of royalties under its license sought a declaration that the "patent is invalid, unenforceable, or not infringed," even though there was no patent litigation at the time).  Indeed in *Wegmann v. London*, 648 F.2d 1072 (5th Cir. 1981), the court held that there was even federal question jurisdiction to consider an action by six former partners in a law firm for a declaration that "certain provisions in the firm partnership agreement violate section 1 of the Sherman Act," although it was "only an anticipatory federal defense to a state law breach of contract claim."  *Id.* at 1074.

Here, the risk of injury is even more concrete because Foit has already sued McCain for breach of contract, and this Court has already found McCain in contempt.  "Such a [contract] dispute is manifestly susceptible of judicial determination.  It calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts."  *Aetna Life Ins.*, 300 U.S. at 242.

2.  McCain need not establish antitrust standing because he is not seeking damages or injunctive relief under Section 4 or 16 of the Clayton Act, 15 U.S.C. §§ 15, 26.  But, even assuming that antitrust standing were required to seek a declaration that the ReOrg Agreement is unenforceable because it violates Section

1 of the Sherman Act, he would have antitrust standing because his claim flows directly from the ReOrg Agreement's elimination of competition.

a. "[A]ntitrust standing and Article III standing are not one and the same." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007). Antitrust standing is a "threshold" requirement for private parties bringing antitrust claims "lest the antitrust laws become a treble-damages sword rather than the shield against competition-destroying conduct that Congress meant them to be." *Id.* at 450.

The antitrust-standing requirement, however, does not apply here. Antitrust standing is required in any suit for damages or injunctive relief under Section 4 or 16 of the Clayton Act. *See, e.g.*, *Valley Products Co. v. Landmark*, 128 F.3d 398, 402-03 (6th Cir. 1997). But this is a contract action brought in federal court pursuant to this Court's diversity jurisdiction, and an action for declaratory judgment under Chapter 2721 of the Ohio Revised Code. McCain "seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy based on the antitrust . . . laws." *Kaiser Steel Corp.*, 455 U.S. at 81 n.7. Accordingly, establishing antitrust standing is unnecessary. *See United Food & Commercial Workers Local Union Nos. 137, 324, 770, 899, 905, 1167, 1222, 1428, and 1442 v. Food Employers Council, Inc.*, 827 F.2d 519, 525-26 (9th Cir. 1987) (holding that unions' conceded lack of "antitrust standing" did not bar declaratory judgment action challenging validity of "most-favored nations" clause in collective

bargaining agreement); *cf. Bement v. Nat'l Harrow Co.*, 186 U.S. 70, 87-88 (1902) (differentiating a contractual "defense" that it "is void as in violation of the act" from a suit under the antitrust laws and holding that a party sued to enforce a contract could defend on the ground that the contract was invalid under the antitrust laws even if the party could not bring an antitrust suit), *cited approvingly* by *Kaiser Steel Corp.*, 455 U.S. at 81 n.7.

b. Even assuming *arguendo* that McCain needs antitrust standing to seek a declaration that the contract is unenforceable (the only remedy he seeks), he would have it here. In determining whether a private plaintiff has antitrust standing, courts consider: "(1) the causal connection between the antitrust violation and harm to the plaintiff and whether that harm was intended to be caused; (2) the nature of the plaintiff's alleged injury including the status of the plaintiff as consumer or competitor in the relevant market; (3) the directness or indirectness of the injury, and the related inquiry of whether the damages are speculative; (4) the potential for duplicative recovery or complex apportionment of damages; and (5) the existence of more direct victims of the alleged antitrust violation." *Southaven Land Co., Inc. v. Malone & Hyde, Inc.*, 715 F.2d 1079, 1085 (6th Cir. 1983) (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 537-45 (1983)). "No one factor controls." *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 402 (6th Cir. 2012).

All five of the antitrust-standing factors support McCain's declaratory judgment claim:  (1) there is a direct causal connection between the alleged violation of Section 1 (the agreement unlawfully eliminates competition) and McCain's injury (being restrained from, and risking contempt for, competing in certain markets); (2) McCain is a competitor who is restricted by the alleged violation of Section 1 from competing in the relevant geographic markets; (3) his injury flows directly from the agreement and its enforcement; (4) he is not seeking damages, so there is no risk of duplicative recovery; and (5) there is no more direct victim of the agreement restricting McCain from competing than McCain himself.

While McCain is a participant to the challenged agreement, that is hardly unprecedented for Section 1 plaintiffs.  *See, e.g.*, *Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council*, 857 F.2d 55, 67-68 (2d Cir. 1988) (plaintiff alleged cartel among tennis "tournament owners and producers" including itself); *Isaksen v. Vermont Castings, Inc.*, 825 F.2d 1158, 1162-64 (7th Cir. 1987) (Posner, J.) (antitrust suit by dealer in wood-burning stoves against supplier based on "informal agreement" between the two); *US Airways, Inc. v. Sabre Holdings Corp.*, 2017 WL 1064709 (S.D.N.Y. Mar. 21, 2017), *appeal pending* 17-960 (2d Cir.) (antitrust suit by airline challenging its contract with booking platform provider).

Of course, competitors lack antitrust standing when they sue a "rival merely for vigorous or intensified competition."  *NicSand*, 507 F.3d at 450.  But that is not

the case here: McCain is suing to increase competition, not to blunt it. Adjudicating this case thus bolsters the underlying goal of the antitrust laws to protect "*competition* not *competitors*." *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)); *cf. Volvo North America Corp.*, 857 F.2d at 67-68 ("to the extent a cartel member credibly asserts that it would be better off if it were free to compete—such that the member's interest coincides with the public interest in vigorous competition—we believe that the individual cartel member satisfies the antitrust injury requirement").

3. Thus, the question before the Court on summary judgment is whether there is a genuine dispute as to whether the ReOrg Agreement is void because it violates Section 1 of the Sherman Act. While the United States takes no position on the ultimate merits of McCain's claim, we note that agreements to divide markets among horizontal competitors ordinarily are deemed *per se* unlawful under Section 1.

a. Section 1 of the Sherman Act declares "contract[s] . . . in restraint of trade or commerce among the several States . . . illegal." 15 U.S.C. § 1. The legality of most restraints is "analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors,

including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  But the "rule of reason does not govern all restraints." *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007).  Rather, some "types of restraints" have "such predictable and pernicious anticompetitive effect, and such limited potential for procompetitive benefit, that they are deemed unlawful *per se*." *Khan*, 522 U.S. at 10.  The "*per se* approach permits categorical judgments with respect to certain business practices that have proved to be predominantly anticompetitive." *Nw. Wholesale Stationers Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 289 (1985).

b.  Agreements among competitors to "divide markets" are *per se* unlawful under Section 1. *Leegin*, 551 U.S. at 886.  This includes "customer allocation scheme[s]," *United States v. Cooperative Theatres of Ohio, Inc.*, 845 F.2d 1367, 1372-73 (6th Cir. 1988), and "agreements between competitors to allocate territories to minimize competition," *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 (1990) (per curiam).  The Supreme Court "has reiterated time and time again that 'horizontal territorial limitations . . . are naked restraints of trade with no purpose except stifling of competition.'  Such limitations are *per se* violations of the Sherman Act." *Id.* (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 608 (1972)); *see also Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336,

344 (6th Cir. 2006) ("market allocation[s]" are barred "*per se*, regardless of any alleged ameliorative rationale"); *Cooperative Theatres of Ohio*, 845 F.2d at 1372-73 (holding *per se* unlawful "horizontal agreement between two competitors to refrain from seeking business from each other's existing accounts" because it was "a type of customer allocation scheme which courts have often condemned in the past as a *per se* violation of the Sherman Act").

An agreement ordinarily condemned as *per se* unlawful is "exempt from the *per se* rule," however, if it is ancillary to a separate, legitimate venture between the competitors. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.*, 792 F.2d 210, 224, (D.C. Cir. 1986) (Bork, J.). As then Judge Taft explained in *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 282 (6th Cir. 1898), *aff'd*, 175 U.S. 211 (1899), a restraint of trade is lawful if "it is merely ancillary to the main purpose of a lawful contract" such as a business partnership and does not "exceed[] the necessity" of the partnership. *Id.* In other words, "[t]o be ancillary," an "agreement eliminating competition must be subordinate and collateral to a separate, legitimate transaction," and reasonably necessary to "make the main transaction more effective in accomplishing its purpose." *Rothery Storage*, 792 F.2d at 224, 227; *accord Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 335-38 (2d Cir. 2008) (Sotomayor, J., concurring); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985); Gregory J.

14

Werden, *Antitrust Analysis of Joint Ventures: An Overview*, 66 Antitrust L.J. 701, 705-09 (1998).  Ancillary restraints are subject to the rule of reason.  *Rothery Storage*, 792 F.2d at 224; *see also Salvino*, 542 F.3d at 338 (Sotomayor, J., concurring).

Courts applying the ancillary restraints doctrine have upheld agreements not to compete made in conjunction with the sale of a business or dissolution of a partnership when "the restraints attempted thereby are reasonably necessary" to "the enjoyment by the buyer of the property, good will, or interest in the partnership bought" and "commensurate" with "the reasonable protection of the covenantee in respect to the main transactions affected by the contract."  *Addyston Pipe*, 85 F. at 281, 290-91.  To assess whether the restraint is ancillary, courts consider the facts and circumstances surrounding its adoption and its relationship to the sale or dissolution.  *See, e.g.*, *Blackburn v. Sweeney*, 53 F.3d 825, 828 (7th Cir. 1995).  They also consider whether the restraint is "enforced reasonably with respect to time, geographic scope, and product."  *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 269 (7th Cir. 1981).  The time period of restraints found reasonable under this doctrine usually has been no more than a few years.  *See, e.g.*, *Eichorn v. AT&T Corp.*, 248 F.3d 131, 136-37, 145-46 (3d Cir. 2001) (245 days); *Syntex Labs., Inc., v. Norwich Pharmacal Co.*, 315 F. Supp. 45, 56 (S.D.N.Y. 1970) (two years), *aff'd*, 437 F.2d 566 (2d Cir. 1971).  And the reasonableness of geographic

scope is usually evaluated with respect to "the territory occupied by the business." *Harrison v. Glucose Sugar Refining Co.*, 116 F. 304, 309 (7th Cir. 1902).

Horizontal market-allocation agreements that are not reasonably necessary to the sale or dissolution remain *per se* unlawful. For example, in *Blackburn*, a state court ordered dissolution of a law firm partnership and, one month later, two groups of partners agreed to allocate the territories in which each could advertise their services. 53 F.3d at 827. The Seventh Circuit rejected the argument that the restraint was "ancillary to the agreement to dissolve the partnership," because the evidence showed that "the fission [between the partners] had occurred and the partnership was essentially over at the time the Agreement was entered," so "the only effect of the Agreement was to limit the potential competition between the resulting firms." *Id.* at 828. Moreover, the court explained that "the Agreement's infinite duration" showed that "[t]he restriction on advertising is thus naked, not ancillary and *per se* illegal to boot." *Id.* at 828-29. The court thus held that "the Agreement" was "unenforceable." *Id.* at 829.

*       *       *

McCain claims a serious violation of the federal antitrust laws. Collusion among competitors has been called the "supreme evil of antitrust," *Verizon Commc'ns, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004), and collusion to allocate markets or customers is a "classic example[] of a *per se*

16

violation" of the Sherman Act, *Cooperative Theatres of Ohio*, 845 F.2d at 1371 (internal quotations omitted). It would be a perverse result if participants could not withdraw from such agreements without facing liability for breaching the very agreement outlawed by the Sherman Act. Neither Article III nor the antitrust-standing doctrine requires such a result. And thus, if McCain's claim is meritorious, it should provide a complete defense to any breach of contract claim, and this Court should issue the declaratory judgment he seeks.

## CONCLUSION

McCain has standing to seek a declaration that the ReOrg Agreement is unenforceable because it violates Section 1 of the Sherman Act.

Dated: April 25, 2018

Respectfully submitted.

/s/ Nickolai G. Levin

MAKAN DELRAHIM
  *Assistant Attorney General*

ANDREW C. FINCH
  *Principal Deputy Assistant Attorney General*

MATTHEW J. HORWITZ
  *Attorney*
  U.S. Attorney's Office for the
  Southern District of Ohio
  221 E. Fourth St. #400
  Cincinnati, OH 45202
  Tel: (513) 684-6823

KRISTEN C. LIMARZI
JAMES J. FREDRICKS
NICKOLAI G. LEVIN
  *Attorneys*
  U.S. Department of Justice
  Antitrust Division
  950 Pennsylvania Ave. NW #3224
  Washington, DC 20530
  Tel: (202) 514-2886

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

_____

SHAWN McCAIN,                                           )
                                                        )
        Plaintiff-Counter Defendant,                    )         Civil No. 1:14-CV-00791-MRB
                                                        )
                v.                                      )         Judge Michael R. Barrett
                                                        )
APEX ENERGY GROUP, et al.                               )
                                                        )
        Defendants-Counter Claimants.                   )
_____               )

CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2018, I caused to be electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all parties by operation of the Court's electronic filing

systems.

Dated:  April 25, 2018                          /s/ Nickolai G. Levin
                                                *Attorney*

18